*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JESSICA WEBB,

        Plaintiff-Appellee,

v

CITY OF DETROIT,

        Defendant-Appellant,

and

JAMES O. BURSE,

        Defendant.

UNPUBLISHED
September 10, 2020

No. 348510
Wayne Circuit Court
LC No. 17-016249-NI

Before: JANSEN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant City of Detroit appeals as of right the trial court order denying its motion for summary disposition of the negligence claim premised on governmental immunity. Finding no errors warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).[1]

---

[1] In addition to dismissal premised on governmental immunity, defendant also contended that plaintiff's claims were barred because she was more than 50% at fault for the cause of the accident, MCL 500.3135(2)(b), more than 50% at fault because of impaired ability due to intoxication, MCL 600.2955a, and failure to secure any necessary insurance for the vehicle, MCL 500.3135(2)(c). The trial court ruled that there were factual issues precluding summary disposition of these claims. Although these challenges were raised in the statement of questions presented, this Court ordered that only the issues addressing governmental immunity would be considered in this appeal. *Webb v City of Detroit*, unpublished order of the Court of Appeals (Docket No. 348510, entered

## I. BASIC FACTS AND PROCEDURAL HISTORY

This litigation arises from a chain reaction accident in which a city bus collided with a vehicle that struck plaintiff who was standing nearby and suffered injuries. Specifically, in October 2017, plaintiff "shared" a Dodge Journey with her daughter Monica Webb. After spending the day running errands, plaintiff drove the vehicle to a local bar and consumed alcoholic beverages. At approximately 3:30 a.m., she left the bar and drove on a four-lane road with two lanes in each direction. Plaintiff alleged that a vehicle driven by Devontae Wilson cut in front of her in the left lane and caused her to drive into the right lane to avoid colliding with his vehicle. She claimed that Wilson suddenly turned right into a driveway from the left lane. Plaintiff declined to state that she drove into or rear-ended Wilson's vehicle, but claimed that the two vehicles collided.

Wilson, an emergency medical technician, testified that he drove northwest on Morang, turned right into his driveway, and was rear-ended. The rear passenger side of his vehicle was struck by the front end of the plaintiff's vehicle. This caused his car to spin around two to three times, and it landed in his next-door neighbor's yard, but facing the street. Plaintiff's vehicle was "almost parked on the other side of the street facing the wrong way." Wilson tried to talk to plaintiff, but she said that the accident was Wilson's fault. The situation became "intense," so he called the police. Wilson was on the phone with the police when the bus hit plaintiff's car, but he did not see the accident. He believed that the bus was traveling 35 or 40 miles per hour (mph) in a 30-mph zone because of the sound of acceleration. Wilson was "pretty sure" that the lights were illuminated on plaintiff's vehicle.

Lenard Peterson was playing cards in a nearby home when he heard the sound of the first accident. He saw plaintiff get out of her vehicle as she spoke on the telephone. Peterson saw that plaintiff was bleeding from her nose and offered to assist her. Plaintiff said that her family was on the way. Peterson opined that plaintiff was having an exchange with the "three" men that were involved in the accident, and he stayed nearby to ensure that no one harmed her. The area was "a little dark," despite the streetlights, and it was raining. Peterson heard a bus coming, but thought there was enough room to maneuver around plaintiff's vehicle. The bus was traveling "a little fast" to be approaching an accident scene. Plaintiff was at the back of her vehicle, and Peterson suggested that she step out of the way because of the bus. The bus did not reduce speed, and it hit plaintiff's vehicle. Plaintiff's vehicle struck her and knocked her "down the street" for "more than 20 feet." Peterson estimated that the bus was traveling 40 to 50 mph in light of his experience "driving for years."

Peterson thought that plaintiff's vehicle was facing the direction in which the bus was coming. Plaintiff's vehicle was not straight, but "at like kind of a contorted angle" and was partially in the street. Peterson thought the bus was traveling in its lane. He could not recall if the headlights or hazard lights were on plaintiff's vehicle. After the second accident, Peterson ran to plaintiff. He picked up her phone and told her family that she had been hit by a bus. The family

---

December 27, 2019) ("The Court orders that the motion to dismiss all non-governmental immunity claims for lack of jurisdiction is GRANTED.") Accordingly, only issues pertaining to governmental immunity are addressed on appeal.

arrived within a couple of minutes, picked her up, and took her to the hospital. James O. Burse, the bus driver, spoke to Peterson after the accident, and he was emotional and distraught because of plaintiff's injury.

Detroit Police Officer Richard Schwab investigated the accident and found that plaintiff was involved in an accident with Wilson because of the heavy rear-end damage sustained to his vehicle. Then, the bus accident occurred with plaintiff's car, and plaintiff was struck by her car as she stood outside it. Plaintiff was rendered incapacitated and immediately transported to the hospital. Because of her incapacity, Wilson provided the accident account. Additionally, Officer Schwab's investigation was hampered by plaintiff's family who were "very difficult to deal with."

Ultimately, Officer Schwab reviewed the video taken from the bus and concluded that Burse was a "possibly fatigued [driver] operating a bus striking the complainant's vehicle" and her vehicle "was left to center." There was functional damage to plaintiff's vehicle. It was unknown what damage was sustained as a result of the rear-end collision as opposed to the accident with the bus. Officer Schwab did not know if the headlights on plaintiff's vehicle were operational after the first accident.

His report also noted that Burse was tested for drugs and alcohol, and the results were negative. It was concluded that Burse collided with plaintiff's vehicle because of possible fatigue. With regard to the lighting, Officer Schwab acknowledged that it was dark in the area of the accident, and it was raining at the time. Consequently, bus driver Burse was issued a ticket for the accident.

Burse acknowledged that he was given a ticket for fatigue arising from this accident, went to court, pleaded no contest, and paid the ticket. At the court hearing, he recalled providing the following factual summary about the accident:

> And I told them that it was - - like I say, it was raining hard and visibility was low. Like I say, I wasn't speeding. And like I say, by the time I came upon the vehicle there was no lights, no flashing emergencies or nothing. It was in the road and I tried to avoid it, but there was a car coming in the other lane, and I couldn't avoid it and that's when I struck that vehicle.

Burse testified that, although there were streetlights in the area, the trees were "like up under the light." Additionally, it was "raining really hard and visibility was really low."

Burse disputed the statement in the police report that plaintiff's vehicle was parked when the bus struck it. He noted that the vehicle was not properly parked, but was in the lane of traffic and at an angle. Additionally, the hazards and headlights were not on at the time. He explained that he came upon plaintiff's vehicle protruding into the lane of travel and tried to take evasive action, but he could not travel into the other lane because a vehicle was approaching from the other direction. Although it was raining hard, he was not speeding in that area. The right side of the front of the bus struck the left side of the front fender of plaintiff's vehicle. Burse checked on the bus passengers, then became aware of plaintiff's injury when he saw her lying on the ground. Burse was certain that plaintiff's vehicle was obstructing the eastbound lane of traffic as he travelled eastbound. Burse also testified that he was traveling under the speed limit because of the

weather conditions, but he could not state his exact speed. He braked just before he came upon the car, but when he applied the brakes, it was too late. Burse never saw plaintiff in the street before the accident because it was "hard to see anything." Burse denied that he fell asleep or dozed off, but he acknowledged that he may have been fatigued. He began his shift at 7:00 p.m., and the accident happened around 4:00 a.m. As a result of the accident, Burse received discipline of a one-day "retrain." That is, he drove a shift while observed by another driver who evaluated his patterns.

Plaintiff's medical records disclosed that her "ethanol percent" was "0.12% High." Additionally, the bus was monitored by video equipment. However, there was no camera on the front of the bus filming the roadway in front of the bus. Rather, the camera was placed above and behind the Burse's head.[2] As the video progressed, various lighting was observed coming into the windshield area. However, it could not be ascertained what the lighting was coming from, whether it was a streetlight, a light from an oncoming vehicle, or a reflective light coming back toward the bus. There does not appear to be any lighting directed toward the bus just before the accident. However, defendant did present evidence that Burse was travelling 30 mph prior to the accident, contrary to the beliefs offered by Wilson and Peterson.

Plaintiff filed suit against defendant city and bus driver Burse alleging negligence and gross negligence for the failure to stop the bus in an assured safe distance, causing a collision between plaintiff and her vehicle. Defendants moved for summary disposition, contending that they were entitled to governmental immunity from the acts of ordinary negligence. Specifically, it was alleged that plaintiff drove her vehicle with a blood alcohol content above the legal limit and without the necessary insurance. After being involved in an accident with Wilson, plaintiff did not comply with the legal requirement to remove the vehicle from the roadway, but allegedly left the vehicle running and without its lights on and facing the wrong direction.

In light of this factual scenario, defendants contended that the claim of gross negligence against Burse must be dismissed pursuant to MCL 691.1407(7) because the driver was engaged in the course of his employment, defendant city was engaged in a governmental function (the operation of a public transportation system), and the conduct did not rise to the level of gross negligence that was the proximate cause of injury. Further, the camera did not show any light illuminated on plaintiff's vehicle before the accident. Accordingly, it was claimed that plaintiff failed to demonstrate the elements of negligence and Burse's conduct was not "the" proximate cause of plaintiff's injuries, and therefore, both defendants must be dismissed.

Plaintiff filed a response in opposition to defendants' motion for summary disposition. It was alleged that Burse was grossly negligent in his operation of the bus by failing to keep a lookout for road hazards and falling asleep. It was acknowledged that plaintiff was involved in an accident with Wilson. However, after this accident, her vehicle's lights were on, and it was operational. As plaintiff spoke on the telephone to her family, the bus struck her vehicle "going full speed," and that vehicle slammed into plaintiff. Additionally, other witnesses testified that plaintiff's vehicle was visible, and the bus was speeding. The police officer who investigated the accident

---

[2] There was also a camera view of bus passengers entering the bus and the seating area of the bus. However, those views are not pertinent to resolution of the issues.

observed the video from the bus and opined that it appeared that Burse was fatigued because he adjusted in his seat, perhaps to stop himself from falling asleep.

Plaintiff alleged that these facts demonstrated that Burse operated the city bus in a grossly negligent manner, and therefore, defendants were responsible in tort liability. Specifically, gross negligence was demonstrated by the investigating officer's testimony that Burse appeared fatigued, and he failed to take evasive action to avoid plaintiff's vehicle. This evidence also established that Burse was the proximate cause of plaintiff's injuries. Regardless of the manner and direction of plaintiff's vehicle, driving the bus in a fatigued state without evasive action caused the accident. Accordingly, defendant city was liable under the motor vehicle exception to government tort liability as well as arising from the gross negligence of Burse. This evidence of gross negligence created factual issues regarding plaintiff's fault and precluded summary disposition of her claims.

In reply, defendants highlighted that plaintiff acknowledged her vehicle was stopped "in the road," and she also failed to deny that her vehicle was facing the wrong direction and angled into the lane of travel. Although plaintiff claimed that her vehicle's headlights were on, the video from the bus demonstrates that there were no headlights or hazard lights visible to bus driver Burse. The video also shows that Burse was awake and responsive. Plaintiff could not rely on facts that were contradicted by the video evidence. Furthermore, even if it was assumed Burse fell asleep, caselaw holds that falling asleep at the wheel does not provide evidence of gross negligence. Consequently, defendants were entitled to summary disposition.

The trial court heard oral argument on the motion and then ruled as follows:

> Gross negligence is defined within the GTLA as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.
>
> An act is grossly negligent when an objective observer concludes the actor simply did not care about the safety or welfare of those in charge.
>
> That's Tarlea v CrabTree, 263 Mich App 80 (2004) case.
>
> Further evidence of ordinary negligence does not create a material question of fact concerning gross negligence. That's pursuant to Maiden v Rozwood, 461 Mich 109.
>
> Rather to establish gross negligence the evidence must demonstrate that the contested conduct was substantially more than negligent.
>
> Summary disposition on the issue of whether conduct constitute[s] gross negligence is not appropriate if reasonable Jurors could honestly reach different conclusions.
>
> However if reasonable minds could not differ the issue may be determined by a Motion for Summary Disposition. That's Oliver v Smith, 290 Mich App 678.

While there's a line of cases such as <u>Boos</u> v <u>Sauer</u>, 266 Mich 230 which recognize falling asleep, this is only where there is such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of the consequences.

Thus a driver overcome by sleep or fatigue is not guilty of gross negligence or wilful and wanton misconduct unless he continues driving in reckless disregard of premonition-type symptoms.

After careful review of the entire record even viewing in the light most favorable to the non-moving Plaintiff no reasonable factfinder could conclude Mr. Burse's actions constitute a reckless disregard or that it was substantially more than negligent, he's thus entitled to governmental immunity and any claims he gets individually are dismissed as a matter of law under (C)(7) and (C)(10).

Defendant's [sic] motion is denied and [sic] other respects as this record when viewed in the light most favorable to the nonmoving Plaintiff is replete with genuine material and factual disputes upon which reasonable minds could differ.

Including whether Mr. Burse was ordinarily negligent and if so to what extent of fault Plaintiff was comparatively negligent, including whether and if so to what extent of fault her intoxication contributed to the incident.

And 3, genuine issues of material fact regarding proximate causation.

So that's the ruling of the Court.

Thus, the trial court granted summary disposition of the claim alleging gross negligence pertaining to Burse, but denied defendant's motion for summary disposition of the negligence claim. Plaintiff did not appeal the dismissal of the gross negligence claim, and therefore, the appellate challenge is limited to whether the trial court erred in denying summary disposition of the negligence claim.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate pursuant to MCR 2.116(C)(7) when the moving party is entitled to "immunity granted by law." When reviewing a motion for summary disposition premised on immunity, this Court examines the affidavits, depositions, admissions and other documentary evidence to determine whether the moving party is entitled to immunity as a matter of law. *Margaris v Genesee Co*, 324 Mich App 111, 115; 919 NW2d 659 (2018). The evidence is viewed in the light most favorable to the nonmoving party. *Id*.

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or

submitted by the parties.  MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosp*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

### III.  APPLICATION OF GOVERNMENTAL IMMUNITY

Defendant alleges that the trial court improperly denied summary disposition premised on the automobile exception to governmental immunity.  We disagree.

### A. NEGLIGENT OPERATION

Pursuant to the government tort liability act (GTLA), MCL 691.1401 *et seq*, governmental agencies and their employees are entitled to immunity from tort liability when engaged in the exercise or discharge of a governmental function.  *Ray v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017).  The only theory of liability challenged in this appeal is the automobile exception to governmental immunity for claims of negligent operation of a motor vehicle pursuant to MCL 691.1405.  MCL 691.1405 states:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, being sections 257.1 to 257.923 of the Compiled Laws of 1948.  [MCL 691.1405.]

MCL 691.1405 holds governmental agencies responsible for injury and damage resulting from an employee's "negligent operation" of a motor vehicle.  To establish a prima facie case of negligence, the burden of proof rests with the plaintiff to show that (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached the duty; (3) the plaintiff suffered damages; and (4) the defendant's breach was a proximate cause of the damages sustained by the plaintiff.  *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012).

With regard to proximate cause, the *Ray* Court held as follows:

> Proximate cause is an essential element of a negligence claim.  It involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.  Proximate cause is distinct from cause in fact, also known as factual causation, which requires showing that but for the defendant's actions, the plaintiff's injury would not have occurred.  Courts must not conflate these two concepts.  We recognize that our own decisions have not always been perfectly clear on this topic given that we have used proximate cause both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation.  All this broader characterization recognizes, however, is that a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold is that the defendant's negligence was the proximate or legal cause of those injuries.  In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligence risked.  If factual causation cannot be established, then proximate cause,

-7-

that is, legal causation, is no longer a relevant issue. [*Ray*, 501 Mich at 63-64 (citations and quotations omitted).]

To establish cause in fact, the plaintiff must present substantial evidence from which the jury may conclude that more likely than not, but for the defendant's action, the plaintiff's injuries would not have occurred. *Patrick v Turkelson*, 322 Mich App 595, 617; 913 NW2d 369 (2018). Plaintiff presents sufficient evidence of causation to create a question of fact for the jury in response to a motion for summary disposition if it establishes a logical sequence of cause and effect irrespective of the existence of other plausible theories that may have evidentiary support. *Id*. However, causation cannot be established by mere speculation. *Id*.

In *Skinner v Square D Co*, 445 Mich 153, 165-166; 516 NW2d 475 (1994), the Court delineated the threshold evidentiary standard necessary for a plaintiff to prove factual causation in negligence cases:

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

> The mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two.

> There must be substantial evidence which forms a reasonable basis for the inference of negligence. There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess . . . .

In light of the record, we conclude that the trial court properly denied summary disposition of the claim premised on the automobile exception to governmental immunity in light of factual issues surrounding the nature and cause of the accident.[3] The parties do not dispute that the bus constitutes a motor vehicle for purposes of MCL 691.1405, defendant is the owner of the bus, the bus was operated as a motor vehicle, and Burse was an employee of defendant. Thus, the only remaining issue is whether plaintiff's bodily injury was caused by Burse's negligent operation, MCL 691.1405. Admittedly, plaintiff inappropriately drove in an intoxicated state and rear-ended

---

[3] Plaintiff contends that defendant is not challenging proximate causation, but rather alleges that "the sole question is whether its bus driver acted negligently, i.e., whether he breached his duty to use due care in operating the bus." However, a review of defendant's brief reveals that it contends that there was no "negligence" by Burse, and it alleged that "[w]ithout the first accident caused by Plaintiff, there would not have been a second accident." Thus, contrary to plaintiff's assertion, defendant's brief does challenge the cause of the accident.

Wilson's vehicle. The net result was plaintiff's vehicle was left in the street protruding out into a lane of travel. However, the degree of the protrusion is unknown. Although witnesses testified that plaintiff's vehicle was not flush or straight against the curb, but was slanted, it is unknown how far into the lane of travel plaintiff's vehicle was.[4]

Nonetheless, Officer Schwab testified that his investigators compiled data and concluded that Burse was "possibly fatigued" after having worked for nine hours and appeared to be shifting in his seat. Although shifting in one's seat may not necessarily demonstrate fatigue, Burse pleaded no contest to the ticket that was issued to him. Further, Burse testified that the driving conditions were difficult because it was dark and raining. Nonetheless, despite his acknowledgement of the lack of visibility, he did not lower his speed below the speed limit. MCL 257.627(1) requires a motorist to maintain an assured, clear distance ahead. Arguably, if Burse had lowered his speed in light of the difficult conditions, the accident may not have occurred.

Although the parties dispute the import of the video and whether the lights were on plaintiff's vehicle, we conclude that this dispute presents an issue for resolution by the jury. It is not apparent from the video that Burse saw the vehicle, he did not appear to take evasive action, and he did not appear to brake before the accident. This lack of action may be consistent with plaintiff's vehicle not having functioning headlights or hazard lights. However, irrespective of the lighting from plaintiff's vehicle, the degree of its protrusion into the lane of travel has an impact on whether Burse was negligent. In short, because of the different opinions of the witnesses, Officer Schwab's conclusion that Burse was negligent by driving while fatigued, Burse's no contest plea to the ticket, and the lack of an ability to recreate the weather, lighting, and vehicle placement that evening, the trial court did not err in denying summary disposition of the claim premised on the automobile exception to governmental immunity.[5]

## B. SUDDEN EMERGENCY DOCTRINE

---

[4] There was no evidence regarding the width of the lanes of travel in the area in comparison to the length of plaintiff's vehicle. Additionally, there was no expert analysis of the vehicles and whether the nature of the damage could disclose the point of impact. Burse essentially testified that he merely clipped the front fender of plaintiff's vehicle and any damage to the passenger door was collateral to the initial impact. However, opinion evidence from an expert was not presented to corroborate that lay testimony.

[5] We also decline to conclude as a matter of law that plaintiff violated state and local law by leaving her vehicle in the lane of travel with the engine running and the lights on. Although plaintiff testified that both the engine and lights were on, her vehicle was towed from the scene according to the police report, and Officer Schwab indicated her vehicle was not functional. Moreover, plaintiff was in the process of obtaining aid from her family from this second collision. In light of the arrival of three family members at the scene, they may have pushed plaintiff's vehicle to the curb out of the lane of travel, but plaintiff's subsequent injury from the second accident required that they rush plaintiff to the hospital instead.

Defendant also contends that negligent operation of a motor vehicle cannot be established because Burse was faced with a sudden emergency. We disagree.[6]

The sudden emergency doctrine applies when a collision occurs but it is shown that its occurrence was the result of a sudden emergency that was not of the defendant's own making. *White v Taylor Distrib Co*, 482 Mich 136, 139-140; 753 NW2d 591 (2008). In *Taylor*, the defendant asserted that he experienced a sudden emergency when he became dizzy and blacked out seconds before colliding with the plaintiff's vehicle. However, the sudden emergency must by totally unexpected and not the result of the defendant's own making. Thus, where there was evidence that the defendant may have known that he was not feeling well, but continued to drive, a genuine issue of material fact was presented regarding whether there was a sudden emergency that was totally unexpected. *Id*.

In his deposition, Burse testified that he did not fall asleep or doze off, but indicated that he may have been fatigued. Additionally, Burse pleaded no contest to the ticket he was issued and acknowledged that the visibility conditions caused by the lighting and the rain were poor. Yet, Burse did not lower his speed despite this acknowledgment. Under the circumstances, a jury issue was presented regarding the application of the sudden emergency doctrine.

## C. UNPUBLISHED AUTHORITY

Defendant also contends that this Court may grant summary disposition pursuant to *Parkman v Enterprise Leasing Co of Detroit LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 28, 2017 (Docket No. 335240). We disagree.

The *Parkman* decision is unpublished and not binding precedent, MCR 7.215(J)(1). More importantly, the decision is factually distinguishable. In *Parkman*, the plaintiff alleged that a city bus driver negligently struck the door on her rental vehicle by swerving into the parking lane. However, the bus driver, Glenn, testified that he did not leave his lane of travel and enter the parking lane, and the damage to the plaintiff's vehicle door occurred at the right rear tire of the bus. *Id*. at p 1-2. Further, plaintiff did not present evidence regarding how her vehicle was parked in the parking lane, and therefore, it was speculative regarding whether the car door extended beyond the parking lane. Thus, in *Parkman*, the physical evidence, that the plaintiff's car door struck the rear tire of the bus, failed to controvert Glenn's testimony that he did not leave his lane of travel particularly when it was unknown if the plaintiff's car door remained solely within the parking lane. *Id*. at p 5. However, in the present case, Burse acknowledged that there were conditions that made it difficult for him to see, yet he did not take precautions to address the lack of lighting and the rain, such as slowing his speed below the speed limit. Additionally, in his deposition, Burse acknowledged that he may have been fatigued. Further, the police investigation concluded that he was responsible despite the video evidence. Under these circumstances, the evidence presented a jury issue.

---

[6] It is unclear if this issue is preserved for appellate review. The trial court did not expressly address this claim, but stated that factual issues precluded summary disposition. Nonetheless, for purposes of completeness, we address it.

## IV. GROSS NEGLIGENCE

Finally, defendant alleged that there is no exception to a city for governmental immunity claims arising out of the gross negligence of its employees. Therefore, count II of plaintiff's complaint raising gross negligence must be dismissed as it pertains to defendant. We disagree.

Generally, an issue is preserved for appellate review if it is raised, addressed, and decided by the trial court. *Mouton v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). This issue is not preserved for appellate review because it was never raised and decided in the trial court.

Additionally, in the complaint, plaintiff alleged tort liability against "third party" Burse as Count I. However, the next allegation of the complaint combined counts II and III and was entitled:

**COUNTS II AND III: MOTOR VEHICLE EXCEPTION TO GOVERNMENTAL IMMUNITY AND GROSS NEGLIGENCE AGAINST DEFENDANT DRIVER**

When the trial court ruled that it would dismiss the claims of gross negligence against Burse, defendant did not raise concerns about the validity of the pleading in the complaint where counts II and III were combined. Moreover, defendant could have filed a motion or submitted an order demonstrating that specific paragraphs or allegations in the complaint were stricken as a result of the summary disposition decision. Alternatively, a motion for a more definite statement could have been filed in light of the dismissal of Burse. Because defendant did not challenge the pleading of the complaint in the trial court and it is apparent that the trial court dismissed the claim of gross negligence pertaining to Burse, any concern defendant had about the allegations that remain should be raised in the trial court, not on appeal for the first time.

Affirmed. Plaintiff, the prevailing party, may tax costs.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron